UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

GARGANUS MOORE,

    Plaintiff,

    v.                                   CAUSE NO.: 3:18-CV-1023-PPS-MGG

S. FRAZIER, et al.,

    Defendants.

## OPINION AND ORDER

Garganus Moore, a prisoner without a lawyer, was terminated from his prison kitchen job for allegedly stealing food. He claims his Equal Protection rights were violated in the process by defendants Frazier and Akins.[1] He also claims he was terminated in retaliation for submitting an informal grievance. This count, brought under the First Amendment, is against Frazier, Captain Rippe, and Barney Turnipseed. The parties have filed cross-motions for summary judgment. The defendants argue they are entitled to summary judgment because they had a rational basis for accusing Moore of stealing food and they terminated him due to food theft and his confrontational nature.

## Factual Background

During the latter half of August 2018, Moore began working in the kitchen at the Westville Correctional Facility. ECF 67 at 2-3. At that facility, Turnipseed served as the

---

[1] Although Moore names defendant "Atkins" in his complaint, her declaration establishes her name is Jacquelyn Akins. ECF 78-1. Therefore, I will refer to her as Akins in this order.

assistant food service director, and Frazier served as the lead kitchen supervisor. ECF 78-2; ECF 78-3. Akins served as a kitchen supervisor, and her responsibilities included preparing kosher diet trays. ECF 78-1. Aramark employed each of these defendants. ECF 78-1; ECF 78-2; ECF 78-3.

According to the complaint, on November 20, 2018, Frazier and Akins blamed Moore for adding tomato paste to a kosher tray.[2] ECF 2 at 3. This accusation against Moore was the culmination of three weeks of harassment which included Akins' accusing Moore of laziness and stealing food, allowing another inmate to use his assigned grill, and Frazier reporting him to correctional staff for food theft. *Id.* at 4. On November 21, Moore submitted an informal grievance in which he stated that he would file a lawsuit if the harassment did not stop. *Id.* at 4-5. On November 22, Frazier walked past Moore with the informal grievance in hand, telling Moore, "Now I am going to get you." *Id.* at 5. Frazier and Turnipseed then worked together to prepare a poor performance evaluation. *Id.* at 6. On November 22, Moore was terminated, and Captain Rippe ordered Moore back to his dormitory. *Id.*

According to Frazier, inmate workers had the choice to eat their meal tray in the kitchen or to set their meal tray aside in the kitchen to eat in their cell at the end of their shift. ECF 78-3 at 1-2. In the weeks preceding Moore's termination, Frazier noticed the presence of kosher food trays in the break room, which she found unusual. *Id.* at 2. She also noticed that Moore, who received kosher meals, left at the end of his shift with his

---

[2] The parties do not dispute that tomato paste should not be present on a kosher food tray.

2

food tray. *Id.* Based on these observations, she suspected that Moore had been adding extra food to his tray to take back to his cell. *Id.* On November 20, Frazier uncovered a tray left behind by Moore and found tomato paste, which should not have been on a kosher meal tray. *Id.* After Frazier received the informal grievance, Moore followed her around, attempted to discuss the grievance with her, told her to ignore his food theft, and accused her of racism.[3] *Id.* at 2-3. Based on this encounter, she asked Sergeant Parham to remove Moore from the kitchen. *Id.* at 3. She also asked Turnipseed to assist her with preparing a job evaluation, and she "asked for [Moore] to be removed because he was being confrontational and making [her] uncomfortable" and because of "his attempt to steal food from the kitchen." *Id.*

Akins attested that she saw Moore steal food and that he made her uncomfortable due to his suggestion that she treat him more favorably because of their shared racial identity. ECF 78-1. Turnipseed attested that he did not know of the informal grievance when assisting Frazier with preparing the job evaluation. ECF 78-2 at 2. He further attested that another employee had also complained that Moore made her uncomfortable and that he would not require his employees to work with inmates who made them feel uncomfortable or unsafe. *Id.* Captain Rippe did not make employment decisions for Aramark but managed count letters which is what authorizes inmates to be transported from their dormitory to the kitchen. ECF 80-3. If Aramark

---

[3] Frazier, Akins, and Moore each identify as African-American. ECF 77 at 4; ECF 78-3 at 3.

terminated an employee, that employee would be removed from the kitchen count letter. *Id.* at 2.

At his deposition, Moore testified:

Q: Had you ever had any direct contact with Barney Turnipseed?

\* \* \*

A: I spoke to him coming from the law library one day about this -- about this evaluation and why he didn't do a better job at investigating the matter because even if he felt like I was having a conflict with staff in the production kitchen -- there's two other kitchens in that facility. He could have at least removed me away from Ms. Akins or Ms. Frazier if he felt like that was the problem and put me in one of the two other kitchens, which would allow for me to keep my job and continue my DOL, but instead, they had me terminated for something I didn't even do.

Q: When you spoke with Mr. Turnipseed on the way back from the library, what did he say in response to you?

A: He basically told me he don't care. He's siding with his staff. I mean, I was just telling him, like, man, I'm being retaliated against. Did you even know about the informal grievances? Did you read them? Did you even ask anybody what my productivity was in the kitchen? None of that. He's like it doesn't even matter. I'm siding with my staff. I'm like, but I'm being rolled, you know, basically. He just had a nonchalant I don't care attitude, you know, that they have at the DOC. They stick together. He's an inmate. Treat him less than a human.

Q: Did you ever speak with Turnipseed after that?

A: I eventually was employed in the kitchen, and I was around him a few different times. I never really spoke to him. I just was trying -- I have -- we did kind of speak, but it wasn't like amongst what happened type stuff. It was and it wasn't, you know. I didn't want him to feel uncomfortable and I didn't want to be uncomfortable because I had a lawsuit against him. I was just trying to -- like, man, we here. I hope that this thing don't repeat itself where you all bogusly write me up or put a false evaluation on me and all that. Actually -- I actually -- I was telling Barney Turnipseed I was willing to let him -- I was willing to drop the lawsuit against him if he just

> provide me a witness statement, tell the truth, and Barney Turnipseed said no.

*Id.* at 34-36.

In his response to the defendants' motion for summary judgment, Moore denied ever stealing food from the kitchen. ECF 84 at 7. He denied having any confrontation or conflict with Frazier and Akins. *Id.* at 5. In his attached affidavit, Moore attested that he spoke with Turnipseed about this case when he became employed at another kitchen and that Turnipseed told him that Frazier showed him the informal grievance as they prepared the negative job evaluation. ECF 84-1 at 64. Moore represented that a correctional officer told him that Frazier was in Captain Rippe's office immediately before his removal from the kitchen and that the correctional officer's facial expression was an attempt to inform Moore that his termination was wrongful. ECF 85 at 3.

## Discussion

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether summary judgment is appropriate, the deciding court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). "However, our favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or

5

conjecture." *Fitzgerald v. Santoro*, 707 F.3d 725, 730 (7th Cir. 2013) (citing *Harper v. C.R. Eng., Inc.*, 687 F.3d 297, 306 (7th Cir. 2012)).

Moore asserts an Equal Protection claim for money damages against S. Frazier and Akins for treating him differently than other inmate-workers who received kosher diets by accusing him of stealing food. He does not allege that he was discriminated on the basis of a protected class but expressly asserts a class-of-one claim. "[A] class-of-one plaintiff must show (1) that he has been intentionally treated differently from others similarly situated, and (2) that there is no rational basis for the difference in treatment." *Fares Pawn, LLC v. Indiana Dep't of Fin. Inst.*, 755 F.3d 839, 845 (7th Cir. 2014). "[A] given action can have a rational basis and be a perfectly logical action for a government entity to take even if there are facts casting it as one taken out of animosity." *Flying J Inc. v. City of New Haven*, 549 F.3d 538, 547 (7th Cir.2008). "If we can come up with a rational basis for the challenged action, that will be the end of the matter—animus or no." *Fares Pawn*, 755 F.3d at 845. "[T]he test for rationality does not ask whether the benign justification was the *actual* justification. All it takes to defeat the plaintiffs' claim is a *conceivable* rational basis for the difference in treatment." *D.B. ex rel. Kurtis B. v. Kopp*, 725 F.3d 681, 686 (7th Cir. 2013) (emphasis in original).

"Normally, a class-of-one plaintiff will show an absence of rational basis by identifying some comparator—that is, some similarly situated person who was treated differently." *Fares Pawn*, 755 F.3d at 845. "The theory behind this approach is that if all principal characteristics of the two individuals are the same, and one received more

6

favorable treatment, this may show there was no proper motivation for the disparate treatment." *Id.* (quotation omitted).

The record contains a least one conceivable rational basis for the actions taken against Moore: the supervisors believed that they had witnessed Moore in the act of stealing food. Even if they were mistaken on that fact, that would only make their decision wrong; it wouldn't make it irrational.

But let's assume that Moore had demonstrated the absence of a rational basis. It wouldn't get him anywhere. This is because an inmate can't pursue a class-of-one claim in the employment context. Significantly, the Supreme Court of the United States has held that such claims are not viable in the public employment context because the employment relationship by its nature involves "discretionary decisionmaking based on a vast array of subjective, individualized assessments," *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 603 (2008). It would not be sensible to conclude that public employees are disallowed from making a class of one claim in the employment context but an inmate can. Several courts agree on this point. *See, e.g., Robinson v. Morris*, No. 17-CV-1381-JPG, 2018 WL 659203, at *7 (S.D. Ill. Feb. 1, 2018); *Floyd v. Blaesing*, No. 11-CV-3444, 2012 WL 424854, at *2 (C.D. Ill. Feb. 9, 2012); *Alexander v. Lopac*, No. 11 C 50012, 2011 WL 832248, at *2 (N.D. Ill. Mar. 3, 2011) ("[I]t would be anomalous to allow a prisoner to bring such a claim when corrections officers themselves cannot."). In sum, Moore has not demonstrated the absence of a rational basis, and the viability of a class-of-one claim in the prison employment context is questionable. On this basis, I grant the

defendants' motion for summary judgment with respect to the Equal Protection claim, and I deny Moore's cross-motion.

Moore also asserts a First Amendment claim against Frazier, Captain Rippe, and Barney Turnipseed for their roles in terminating his kitchen job, which, he maintains, was retaliation for submitting the informal grievance on November 20, 2018. "To prevail on his First Amendment retaliation claim, [a plaintiff] must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (quotation omitted).

The parties' dispute focuses on whether the defendants acted with a retaliatory motive with respect to Moore's termination and removal from the kitchen. There is evidence to suggest that the informal grievance motivated Frazier's decision to ask for Moore's termination. The timing is very close, and Moore attested that Frazier told him that she intended to retaliate because of the grievance. On the other hand, there is also evidence to suggest that Moore's workplace misconduct motivated Frazier's decision to sack him. Because the evidence is disputed with respect to Frazier's motive, the motions for summary judgment are denied with respect to the First Amendment claim against Frazier.

Despite Moore's hearsay-based speculation to the contrary, the record contains no evidence that Captain Rippe knew of the informal grievance when he removed

8

Moore from the kitchen count letter. With respect to Turnipseed, Moore's affidavit, which he prepared in response to the defendants' motion for summary judgment, is the only evidence that Turnipseed knew of the informal grievance when he assisted Frazier with preparing the job evaluation. Notably, Moore did not testify to this effect at his deposition despite defense counsel prompting him to recount his interactions with Turnipseed. Rather, Moore testified that he rarely spoke to Turnipseed and did not discuss what happened with him and that Turnipseed essentially shrugged when Moore asked him if he knew about the informal grievance. "In this circuit the sham-affidavit rule prohibits a party from submitting an affidavit that contradicts the party's prior deposition or other sworn testimony." *James v. Hale*, 959 F.3d 307, 316 (7th Cir. 2020). Because Moore's attestation contradicts his prior deposition testimony, I will not consider it for purposes of this summary judgment order. The record thus contains no valid evidence that Captain Rippe or Turnipseed were aware of the informal grievance when Moore was terminated. Therefore, with respect to these defendants, I grant the defendants' motion for summary judgment, and I deny Moore's motion for summary judgment.

To sum up: no claims remain against Captain Rippe, Akins, and Turnipseed, but Moore may proceed on the First Amendment retaliation claim against Frazier.

For these reasons, the court:

(1) DENIES as UNNECESSARY the motion to strike (ECF 83) and the motion to extend (ECF 89);

(2) DENIES the plaintiff's motion for summary judgment (ECF 66);

(3) DENIES the defendants' motions for summary judgment (ECF 76, ECF 80) with respect to Shamika Frazier but GRANTS the motions in all other respects; and

(4) DISMISSES Captain Rippe, Jacquelyn Akins, and Barney Turnipseed.

SO ORDERED.

ENTERED: August 3, 2020.

       /s/   Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT